**GENERAL AMERICAN TRANSPORTATION CORPORATION, Plaintiff,**

v.

**SUN INSURANCE OFFICE, LTD., Defendant.**

Civ. A. No. 707.

United States District Court
E. D. Tennessee,
Winchester Division.

March 30, 1965.

Sonnenschein, Levinson, Carlin, Nath & Rosenthal, Chicago, Ill., James M. Goff, Chicago, Ill., of counsel, Boult, Hunt, Cummings & Conners, Nashville, Tenn., Joseph G. Cummings, Nashville, Tenn., of counsel, for plaintiff.

Spears, Moore, Rebman & Williams, Chattanooga, Tenn., Alvin O. Moore, Chattanooga, Tenn., of counsel, Bigham, Englar, Jones & Houston, New York City, Donald F. Connors, New York City, of counsel, for defendant.

NEESE, District Judge.

This is an action on an insurance contract. The Court's jurisdiction under 28 U.S.C. § 1332 was not disputed, and the action was tried by the Court without the intervention of a jury on October 5, 6, 7 and 8 and November 9 and 10, 1964. Final briefs have now been submitted and considered by the Court.

The plaintiff, as a subcontractor, was engaged in the performance of certain phases of a construction contract at a federal government project, Arnold Engineering Development Center, in Coffee County, Tennessee. A unique structure was being built, principally underground, as a testing facility for jet propulsion engines. A concrete cap was to cover this structure, except for a center-hole, where it was to protrude above the surface of the ground. The cap was to be created by the pouring, in series, of six segments of concrete. This pouring was being accomplished by the prime contractor, but the temporary supporting steel work for the cap was constructed by the plaintiff. When the first such segment had been poured to the extent of 85% to 90% of the segment and about 825 tons of fresh concrete, on December 17, 1962, the supporting structure emitted a loud noise and, immediately, if not simultaneously, the entire temporary steel falsework and fresh concrete under the segment involved fell some 250 feet to the bottom of the silo.

There was in effect at this time a policy of insurance issued to the plaintiff by the defendant, which insured the defendant against " * * * all risks of physical loss or damage * * * from any cause * * * except * * * " certain specified perils. Specifically excluded, *inter alia*, was " * * * (l)oss or damage due to * * * inherent vice [or] latent defect * * * " and " * * * (l)oss or damage due to delay, loss of use, * * * or other consequential loss extending beyond the direct physical loss or damage to the insured property. * * * " The policy included a deduction of $500.00 from any such loss or damage, and limited any recovery to " * * * (t)he actual cash value at the time and place of loss, in no event exceeding however, what it would cost to repair or replace same with material of like kind and quality. * * * " Where improvements and betterments were involved, the contract limited any recovery to " * * * (t)he replacement cost less physical depreciation at time and place of loss, if actually replaced at assured's expense * * *." All the conditions precedent required by the contract and all terms of the policy required to be performed by the plaintiff were seasonably performed or occurred.

The first question for adjudication, therefore, is whether the casualty was covered by the insurance contract of the parties.

The Court finds that the damages sustained by the plaintiff resulted from a combination or concurrence of proximate causes, including at least the negligent welding by the plaintiff's workmen in prefabrication of the highly-stressed top flange of the insert at a truss, designated as truss #3, which apparently failed and permitted an increased deflection of that truss, which in turn resulted in local or general buckling of the bottom chord involved and a transfer of the resulting overloading to adjacent trusses; that, thereupon, the entire falsework system failed almost simultaneously. It would be redundant to undertake to fix any further cause of loss, because " * * * where a policy expressly insures against direct loss and damage by one element, but excludes loss or damage caused by another element,

the coverage extends to the loss even though the excluded element is a contributory cause. * * *" Firemen's Fund Ins. Co. of San Francisco v. Hanley, C.A. 6th (1958), 252 F.2d 780, 783, 785 [1], citing Pearl Assurance Company, Ltd. v. Stacey Brothers Gas Const. Co., C.A. 6th (1940), 114 F.2d 702, 705 [5]. Any such negligence of the plaintiff's workmen in making the prefabrication welds constituted a fortuitous and extraneous event and was not a necessary or normal consequence of the work. "* * * The risk of negligence does not come within any exception to the policy and therefore it is an insured peril. * *" Associated Engineers, Inc. v. American National Fire Ins. Co., D.C.Cal. (1959), 175 F.Supp. 352 [1], citing Central Manufacturers' Mutual Ins. Co. v. Elliott, C.A. 10th (1949), 177 F.2d 1011; Fed. Ins. Co. v. Tamiami Trail Tours, C.A. 5th (1941), 117 F.2d 794; New York, New Haven & Hartford R. R. Co. v. Gray, C.A. 2d (1957), 240 F.2d 460. Such defect was not a latent defect; it could have been discovered with proper inspection. "'* * * "A latent defect is one that could not be discovered by any known and customary test." * * *'" General Motors Corp. v. The Olancho, D.C.N.Y. (1953), 115 F.Supp. 107, 118 [7], affirmed C.A.2d (1955), 220 F.2d 278, on the opinion of the District Judge. Therefore, the plaintiff's loss or damage was covered by the contract of insurance sued on.

■ The structure was redesigned at the behest of the Corps of Engineers of the United States Department of the Army before being replaced at the plaintiff's expense, so the plaintiff is entitled to recover herein the actual cash value at the time and place of the loss: in this instance, on the basis of the inventory of the damaged parts of the structure.

From all which the Court finds and concludes that, excluding the test-cell inserts and shoring platform, the computed loss of the plaintiff, based on a percentage of the original construction costs, to have been $267,579.99; an additional loss sustained by virtue of replacing all the test-cell inserts to have amounted to $37,087.56; the damage to the destroyed platform, based on a percentage of the original cost of constructing it, to have been $28,571.37; and the cost of salvaging and clearing the debris to have amounted to $27,698.50. There is properly deductible from the total loss and damage of $360,937.42, the sum of $279.00 for cash discounts which the plaintiff received on the cost of the original materials and the agreed deduction of $500.00.

■ The Court further finds and concludes that the defendant was not guilty of bad faith in failing to pay the loss and damages of the plaintiff on notice. T.C.A. § 56–1105. There were claims by the plaintiff in six different amounts, and the defendant was entitled to contest the measure of damages, especially because the plaintiff seemed to have such great difficulty in arriving at the proper sum itself. Cf. Russell Mining Co. v. Northwestern Fire & Marine Ins. Co., D.C.Tenn., 207 F.Supp. 162, 167 [7] and Niagara Fire Ins. Co. v. Bryan & Hewgley, Inc., C.A. 6th (1952), 195 F.2d 154 [6]. Therefore, the Court is not assessing any penalty or interest against the defendant under T.C.A. § 56–1105.

The clerk will forthwith prepare, sign and enter a judgment for the plaintiff and against the defendant for $360,158.42.