**PLAZA EQUITIES CORP. and Jefferson Plaza Associates, a Limited Partnership, Plaintiffs,**

v.

**The AETNA CASUALTY AND SURETY COMPANY et al., Defendants.**

**No. 71 Civ. 81.**

United States District Court,
S. D. New York.

March 19, 1974.

Dreyer & Traub, New York City, for plaintiffs; Leonard Holland, Thomas C. Lambert, New York City, of counsel.

J. Robert Morris, New York City, for defendant Aetna Casualty and Surety Co.; Edward J. Lonergan, New York City, of counsel.

Gwertzman, Sessler, Nagelberg & Pfeffer, New York City, for defendant Employers' Liability Assurance Corp., Ltd., by Max J. Gwertzman, New York City.

## OPINION

BONSAL, District Judge.

On December 21, 1969, part of an Arlington, Virginia office and shopping plaza, on which stood a large metal sculpture of the ancient Egyptian phoenix, collapsed, causing damages to the plaza and to the sculpture in the alleged amount of $187,770.74. The structural damage was later repaired and the plaza restored, but the phoenix, untrue to form, never stood again on the plaza. Plaintiffs, owners of the plaza (known as Jefferson Plaza), are suing to recover the damages under two "all risk" insurance policies, one issued by defendant Aetna Casualty and Surety Company (# 53 FP 71055 FC) ("the Aetna policy") and the other by Employers' Liability Assurance Corporation, Ltd. (# E14–40032–72) ("the Employers' policy"). This action was originally commenced in the New York Supreme Court, New York County, but was removed to the federal court on January 8, 1971. Jurisdiction is alleged under 28 U.S.C. § 1332 on the basis of the parties' diversity of citizenship. The action was tried by the Court without a jury on December 11–13, 1973, and decision was reserved.

Jefferson Plaza consists of two office buildings, each of 12 stories, and a motel, all connected by a plaza situated one level above the street level and constructed of 7-inch-thick slabs of concrete. Beneath the plaza, at street level, is a commercial level which includes space for retail stores, and beneath this are three garage levels. The commercial and garage levels extend under the entire plaza level and also under the two office buildings. The plaza level is approximately 200 feet long and the distance between the two office buildings, both facing the plaza, is approximately 100 feet.

The Jefferson Plaza complex was constructed in two phases beginning in 1967. Phase one included the construction of Office Building number 1 (hereafter "OB1"), which is to the east of the plaza, and the motel, which is to the south of the plaza. Phase one also included the construction of part of the plaza, commercial, and garage levels. Phase two included the construction of Office Building number 2 (hereafter "OB2"), which is located to the west side of the plaza, and the balance of the plaza, commercial, and garage levels. On July 30, 1969, a certificate of occupancy was issued by Arlington County with respect to phase one, but OB1 was only partially occupied at the time of the collapse on December 21, 1969, due to continuing work on the interior spaces of the building. The motel was being occupied on December 21, 1969. The

shell of OB2 had been completed and the interior work was in progress, though a certificate of occupancy was not issued with respect to it until the early part of 1970.

The original plans for the complex called for the construction of a skylight in the plaza level, to be located between OB1 and OB2 and approximately 30 to 35 feet from OB2. In the summer or early fall of 1969, however, plaintiffs decided to erect the sculpture of the phoenix over the skylight. This sculpture was approximately 34 feet high, 12 feet wide at its base, and weighed approximately 7,000 pounds. The plans and specifications for the plaza level were modified to accommodate the phoenix, which was installed over the opening in the plaza level that had been intended for the skylight on December 10, 1969. The modified plans and specifications were not submitted to the Arlington County authorities, however, and no certificate of occupancy was obtained with respect to the installation of the phoenix. On December 21, 1969, the concrete of the plaza level around the skylight gave way and the phoenix collapsed into the commercial level, which in turn collapsed into the highest garage level, causing the loss sued upon here. There were no personal injuries. The area of collapse lay on the line between phase one and phase two and was approximately 15 feet wide and 60 feet long.

There is no dispute that plaintiffs gave due and timely notice of the occurrence and loss to both defendants, that the premiums were duly paid, and that this action was timely commenced. Defendants, however, contend that their respective policies do not cover the loss.

■ Since the policies were issued in Virginia, the premises to be insured are in Virginia, and the loss occurred in Virginia, the Court will apply the law of Virginia in construing the two policies. See Colonial Penn Insurance Co. v. Minkoff, 40 A.D.2d 819, 338 N.Y.S.2d 444 (1972). Under Virginia law, contracts of insurance are to be liberally construed in favor of the insured, and ambiguities in the policy are to be construed against the carrier since " 'the law makes every rational intendment to the end that the purpose of insurance, which is that of indemnity, should be effectuated.' " Travelers Indemnity Co. v. Ford, 208 Va. 151, 156 S.E.2d 606, 609 (1967), quoting Dressler v. Reserve Life Insurance Co., 200 Va. 689, 107 S.E.2d 406, 408 (1959). But if the contract is plain and clear and not in violation of law or inconsistent with public policy, courts are bound to adhere to its terms. "It is the function of the court to construe the language of the contract as written, and the court cannot make a new contract for the parties different from that plainly intended and thus create a liability not assumed by the insurer." Pilot Life Insurance Co. v. Crosswhite, 206 Va. 558, 145 S.E.2d 143, 146 (1965). The terms of the policy are to be taken in their plain, ordinary, and popular sense. Travelers Indemnity Co. v. Ford, supra. See United Service Automobile Association v. Pinkard, 356 F.2d 35 (4th Cir. 1966); 1 G. Couch, Insurance § 15:26 (2d ed. 1959).

■ At the trial, the plaintiffs introduced evidence of the occurrence and loss and that the loss was apparently within the terms of the respective policies. Under Virginia law, this evidence is sufficient to shift to the respective insurers the burden of proving that the loss arose from a cause which is excluded from coverage by their policies. See White v. State Farm Mutual Automobile Insurance Co., 208 Va. 394, 157 S.E.2d 925 (1967); Mann v. Service Life Insurance Co., 284 F.Supp. 139 (E.D.Va. 1968); Chase Rand Corp. v. Central Insurance Co., 63 F.Supp. 626 (S.D.N.Y.), aff'd per curiam, 152 F.2d 963 (2d Cir. 1945). See also 13 G. Couch, Insurance § 46:139 (2d ed. 1965).

*The Aetna Policy*

The Aetna policy provides that the insured is covered against "all DIRECT LOSS BY FIRE, LIGHTNING AND BY REMOVAL FROM PREMISES EN-

DANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED." By endorsement, the policy was extended "TO INSURE AGAINST ALL OTHER RISKS OF DIRECT PHYSICAL LOSS, EXCEPT AS HEREINAFTER PROVIDED." The policy describes the property to be covered by an address referring to the entire complex, though in an endorsement entitled "BUILDERS' RISK COMPLETED VALUE FORM" the policy refers to "OFFICE BUILDING NO. 2, PHASE 11."

■ Aetna contends that the loss sued upon here was attributable to a deficiency in design of the supporting structure for the phoenix or to deficiency in workmanship and is therefore not covered by the policy. In a section entitled "EXCLUSIONS", the builders' risk policy provides:

"This Policy does not Insure Against Loss—

A. Directly attributable to error, omission or deficiency in design, specifications, workmanship or materials."

There was evidence that the cause of the collapse was the lack of sufficient structural underpinnings to support the weight of the phoenix. The plaza level was originally designed for the passage of people in and out of the office buildings and the motel, not to support a heavy object such as the phoenix. The evidence also disclosed that while plaintiffs modified the original plans and specifications in order to accommodate the phoenix, the plans were not submitted to the county building authorities nor was a certificate of occupancy obtained for the plaza as modified. Pictures taken of the plaza and commercial levels after the collapse show that there were no supporting columns under the area where the phoenix was placed. In view of this evidence, it is unnecessary to determine the precise location of the initial concrete failure nor is it necessary to dwell on the precise order of events on the date of the collapse, for the primary cause of the collapse is clear: the modifications of the original plans did not provide sufficient structural support for the phoenix's great weight. Therefore, the Court finds that plaintiffs' misjudgment in preparing the modified plans constitutes an error or deficiency in design and specifications within the meaning of the exclusion clause. See 5 J. Appleman, Insurance Law and Practice § 3092 (1970). The case of Equitable Fire and Marine Insurance Co. v. Allied Steel Construction Co., 421 F.2d 512 (10th Cir. 1970), cited by plaintiffs, is not applicable. There, while liability was found on an "all risk" insurance policy notwithstanding an exclusion clause almost identical with the present clause, neither the trial court nor the jury attributed the loss (of a string of welded pipe) to any defect in the pipe itself. Here, the deficiency was in the plaza's design by reason of the lack of structural support for the phoenix.

For the foregoing reasons, the Court finds that Aetna has sustained its burden of showing that its policy was not intended to cover the present loss. Accordingly, defendant Aetna is entitled to judgment dismissing plaintiffs' complaint against it under its policy.

*The Employers' Policy*

The Employers' policy provides that the insured is covered against "all DIRECT LOSS BY FIRE, LIGHTNING AND OTHER PERILS INSURED AGAINST IN THIS POLICY . . . EXCEPT AS HEREINAFTER PROVIDED." By endorsement entitled "SMP SPECIAL BUILDING FORM", the policy was extended to cover "all risks of direct physical loss" to the covered buildings. The policy described the property to be covered by an address referring to the entire complex; in separate endorsements, however, the policy refers to coverage of an "OFFICE BUILDING" and makes reference to coverage of the garage, commercial, and plaza levels.

■ Employers' first contention is that the policy does not cover walks and paved areas. In a section of the SMP Special Building Form entitled "PROPERTY NOT COVERED", the policy provides:

"In addition to the kinds of property which are otherwise excluded or limited under this policy, the following are also excluded from coverage under this form:

A. . . . walks, roadways and other paved surfaces; unless such items are specifically covered by endorsement."

The policy also provides, however, that:

"When the insurance under this policy covers buildings, such insurance shall also cover *all additions and extensions* attached thereto; all fixtures, machinery and equipment constituting a permanent part of and pertaining to the service of the building." (emphasis added)

There is no specific exclusion of the plaza, commercial, and garage levels from the terms of the policy. To the contrary, the evidence presented at trial indicated that the complex was constructed as a single integrated structure with three towers, OB1, OB2, and the motel. The commercial level had space for retail stores, and the garage levels, storage for automobiles. As such, they could not be considered "walks", "roadways", nor "other paved surfaces" within the meaning of the policy exclusion. The plaza level above them was a permanent and connecting part of the entire complex and constituted the "roof" of the commercial level. As such, it is not included within the scope of the exclusion either. Moreover, construction of OB1 and the motel as well as the plaza, commercial, and garage levels were all included together within phase one of the project's construction. In the absence of an express exclusion of the plaza level, the Court finds that all were to be covered together by the same insurance policy. Accordingly, the Court finds that

Employers' has not met its burden of showing that the plaza and commercial levels are excluded from coverage. See University City, Mo. v. Home Fire & Marine Insurance Co., 114 F.2d 288 (8th Cir. 1940); Continental Insurance Co. v. Dunne, 226 F.2d 471 (9th Cir. 1955); 1 G. Couch, Insurance § 6:17 (2d ed. 1959).

■ Employers' second contention is that the policy does not cover buildings in the process of construction. Under the heading "PROPERTY SUBJECT TO LIMITATIONS" the policy provides:

"H. Buildings or structures in process of construction, including materials and supplies therefor, when covered under this policy, are not covered against loss unless caused by fire, lightning, windstorm, hail, aircraft, vehicles, smoke, explosion, riot or civil commotion, vandalism or malicious mischief, . . . ."

On July 30, 1969, a certificate of occupancy was issued with respect to phase one, which included OB1, the motel, and the plaza and commercial levels where the collapse occurred. The motel was completed and occupied at the time of the collapse; the plaza level was also completed and carried pedestrian traffic to and from the motel and OB1, which was completed and partially occupied. The addition of the phoenix, which itself was completed approximately 11 days prior to the collapse, did not render the plaza area "in process of construction." The only construction work that was going on was inside the two office buildings, and its purpose was to arrange the inside spaces to suitably accommodate the future tenants. The Court, therefore, finds on the basis of the evidence presented at trial that the "in process of construction" limitation does not apply to the loss here.

Employers' third contention, that the loss was caused by earth movement, was withdrawn after trial for lack of evidence.

Employers' fourth contention is that plaintiffs increased the hazard. The policy provides:

"Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured;"

This provision is part of the basic fire insurance policy to which the "all risks" endorsement was added. Its inclusion is required by law in all fire insurance policies in Virginia. 6 *Code of Virginia* § 38.1–366 (1950). In the "all risks" endorsement, there is no such exclusion; indeed, the SMP Special Building Form provides coverage for "all additions and extensions" attached to the insured buildings without any mention of whether or not they might increase the hazard. Since the "increase of hazard" clause is only a part of the fire insurance coverage, but not specifically a part of the "all risks" coverage, the Court finds that defendant Employers' has not met its burden of showing that it was intended to apply to subsequent endorsements to the policy absent a specific provision to that effect. *See* Goldman v. Piedmont Fire Insurance Co., 198 F.2d 712 (3d Cir. 1952). Even if considered part of the entire policy, however, the exclusion is not made out here. An increase of hazard occurs only when the insured performs acts which are reasonably calculated to increase the risk and which he knows or should know will increase the risk. The negligence or misjudgment of the insured, which caused the loss here, is insufficient. *See* Brooks Upholstering Co. v. Aetna Insurance Co., 276 Minn. 257, 149 N.W.2d 502 (1967).

Employers' fifth contention is that the policy does not cover loss caused by inherent or latent defect. Under the heading "EXCLUSIONS" the policy provides:

"This policy does not insure under this form against:

. . . . . .

D. Loss caused by:

1. wear and tear, deterioration, rust or corrosion, mould, wet or dry rot; inherent or latent defect;"

A latent defect within the meaning of this policy exclusion is an imperfection in the materials used which could not be discovered by any known and customary test. *See* General American Transportation Corp. v. Sun Insurance Office, Ltd., 239 F.Supp. 844 (E.D.Tenn.1965) and cases cited therein, aff'd per curiam, 369 F.2d 906 (6th Cir. 1966). The Court has found that here the loss was caused by the misjudgment of the plaintiffs in not installing adequate supporting structures to carry the weight of the phoenix, not by any defect in the materials used nor in their installation. In any event, Employers' has not presented any evidence that this misjudgment could not have been discovered through the use of normal weight distribution and stress calculations. Therefore, the Court finds that this exclusion does not apply in the present case.

For the foregoing reasons, the Court finds that plaintiffs are entitled to judgment against Employers' under its policy for the damage to Jefferson Plaza by reason of the collapse,* and Aetna is entitled to a judgment dismissing the complaint as against it.

The foregoing constitutes the Court's findings of fact and conclusions of law. Rule 52(a), Fed.R.Civ.P.

Settle Judgment on notice.

---

* The parties stipulated that in the event the Court found the defendants liable on their respective policies, they would agree to the referral of the damages issues to a special master agreeable to the parties.