[No. 33869-2-I.    Division One.    September 18, 1995.]

KEITH EIDE, ET AL., *Appellants,*
v. STATE FARM FIRE AND CASUALTY COMPANY, ET AL.,
*Respondents.*

*John S. Riper* and *Stanislaw, Ashbaugh, Riper, Peters & Beal*, for appellants.

*William R. Hickman, Michael S. Rogers*, and *Reed, McClure*; and *Thomas Lether* and *Clarke, Bovingdon & Cole*, for respondents.

BECKER, J. — This case requires us to decide whether certain insurance policies cover damage caused by a landslide. The trial court denied coverage. We affirm.

Following extraordinarily heavy rainfall during November and December 1990, a landslide occurred in the Salmon Beach area of Fidalgo Island. Over a period of several days beginning December 30, 1990, cracks opened in the earth extending in an east-west arc more than a

quarter mile long. Resulting displacements ranged from a few inches to a few feet as the hillside gradually slumped toward the beach. Homes located on topographical "benches" stair-stepped above the bluff experienced varying degrees of damage, including cracking, buckling, tilting, bulging, shifting and separating of walls, foundations, chimneys, frames, and driveways. By January 3, 1991, one house at each end of the arc had been condemned and a total of thirty-one structures damaged.

■■ The appellants are owners of homes damaged during the landslide. The respondent insurers, State Farm Fire & Casualty Company and Farmers Insurance Company of Washington, resisted the homeowners' demand for coverage under their all-risk policies. The trial court granted summary judgment in favor of the insurers. The central issue is whether the policy language effectively excludes the damages suffered. Interpretation of insurance policy language is a matter of law that we review de novo. *McDonald v. State Farm Fire & Casualty Co.*[1]

The all-risk policies at issue insure generally against "accidental direct physical loss" to the property. In this type of policy, any risk or peril not specifically excluded is a covered peril.[2] The insurers assert exclusions for damage caused by earth movement or by water damage due to water below the surface of the ground. The homeowners attempt to defeat these exclusions by invoking the efficient proximate cause rule.

■ The Supreme Court adopted the efficient proximate cause rule in 1983 in the case of *Graham v. Public Employees Mut. Ins. Co.*[3] The efficient proximate cause rule replaced the "immediate physical cause" analysis of *Bru-*

---

[1]*McDonald v. State Farm Fire & Casualty Co.*, 119 Wn.2d 724, 730-31, 837 P.2d 1000 (1992).

[2]*Villella v. Public Employees Mut. Ins. Co.*, 106 Wn.2d 806, 816, 725 P.2d 957 (1986); *see McDonald*, 119 Wn.2d at 731 n.5.

[3]*Graham v. Public Employees Mut. Ins. Co.*, 98 Wn.2d 533, 656 P.2d 1077 (1983).

*ener v. Twin City Fire Ins. Co.*[4] The *Bruener* rule provided that the responsible cause of a loss was the direct, violent and efficient cause of the damage.[5] *Graham* discarded that rule because its "mechanical simplicity . . . does not allow inquiry into the intent and expectations of the parties to the insurance contract."[6] After *Graham*, where an insured peril "sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produce the result for which recovery is sought," that peril is the "proximate cause" of the loss.[7] The proximate cause is "the efficient or predominant cause," not necessarily the last act in a chain of events leading to the damage.[8] When the insured can identify an insured peril as the proximate cause, there is coverage "even if subsequent events in the causal chain are specifically excluded from coverage." *Findlay v. United Pac. Ins. Co.*[9]

The homeowners recognize that earth movement, an excluded peril, was the immediate cause of their damage. They rely on two engineering reports suggesting that earth movement was merely the last event in a chain that began either with weakened soil or heavy rainfall. The policies do not explicitly exclude either of these perils.

■ " 'An insured may not avoid a contractual exclusion merely by affixing an additional label or separate characterization to the act or event causing the loss.' " *Kish v. Insurance Co. of N. Am.*[10] If weakened soil and heavy rainfall are factually indistinguishable from excluded

---

[4]*Bruener v. Twin City Fire Ins. Co.*, 37 Wn.2d 181, 222 P.2d 833, 23 A.L.R.2d 385 (1950), *overruled in part by Graham v. Public Employees Mut. Ins. Co.*, 98 Wn.2d at 533, 537, 656 P.2d 1977 (1983).

[5]*Bruener*, 37 Wn.2d at 185.

[6]*Graham*, 98 Wn.2d at 538.

[7]*Graham*, 98 Wn.2d at 538.

[8]*Graham*, 98 Wn.2d at 538.

[9]*Findlay v. United Pac. Ins. Co.*, 78 Wn. App. 17, 20, 895 P.2d 32 (1995).

[10]*Kish v. Insurance Co. of N. Am.*, 125 Wn.2d 164, 170, 883 P.2d 308 (1994) (quoting *Chadwick v. Fire Ins. Exch.*, 17 Cal. App. 4th 1112, 1117, 21 Cal. Rptr. 2d 871, *review denied* (1993)).

perils, then the trial court acted properly in denying coverage as a matter of law. If, on the other hand, weakened soil and heavy rainfall are causes separate and distinct from any causes that the policy excludes, then the case must go back for trial. The identification of a certain event as the efficient proximate cause of a loss is a question of fact.[11]

The homeowners rely on the Supreme Court's pre-*Kish* decision of *Safeco Ins. Co. of Am. v. Hirschmann*.[12] The focus of *Hirschmann* was policy language excluding coverage whenever certain events occur (in that case, earth movement), even when they produce damage in combination with a covered peril (in that case, wind and rain). *Hirschmann* held that such language circumvents the efficient proximate cause rule.[13] We do not reach the issue of circumvention discussed in Hirschmann because, following *Kish*, we have made a threshold determination that none of the causes alleged by the homeowners is a distinct covered peril.

The facts of this case do not support a characterization of weakened soil as a peril distinct from earth movement. The "weakened soil" theory derives from a report by Converse Consultants Northwest, prepared for State Farm. The report explains that the residences are located on a soil mass that is inherently unstable as the result of the last glacial retreat about 10,000 years ago. A major coastal landslide has been ongoing at the site in episodic intervals ever since. The Converse report identifies "the preexisting weakness of the soil due to prior geologic movement" as the most predominant destabilizing factor contributing to the landsliding episode of December 1990.

■■ Courts interpret insurance contracts as an average insurance purchaser would understand them. The policies exclude coverage for landslide. The Farmers policy, for example, provides:

---

[11]*McDonald*, 119 Wn.2d at 732.

[12]*Safeco Ins. Co. of Am. v. Hirschmann*, 112 Wn.2d 621, 773 P.2d 413 (1989).

[13]*Hirschmann*, 112 Wn.2d at 624-25; *Kish*, 125 Wn.2d at 171.

We do *not* cover direct or indirect loss from:

. . .

*2. Earth Movement.*

Acts or omissions of *persons* can cause, contribute to or aggravate *earth movement.* Also, *earth movement* can occur naturally to cause loss, or combine with acts or omissions of *persons* to cause loss. Whenever *earth movement* occurs, the resulting loss is always excluded under this policy, however caused; except we do cover direct loss by fire, explosion or glass breakage resulting from *earth movement.*

The policy defines "earth movement" as:

movement of earth, including, but not limited to the following:

a. earthquake, landslide or mudflow, all whether combined with water or not.

b. collapse, settling, cracking, shrinking, bulging, subsidence, erosion, sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not.

c. volcanic eruption . . . .

The State Farm definition of "earth movement" is substantially the same. The State Farm policy excludes coverage "for any loss which would not have occurred" in the absence of earth movement.

Landslides occur, according to common sense and the words of the Converse report, "when the forces driving land mass movement [become] larger than the forces resisting land mass movement." The ordinary understanding of landslide includes the condition of the soil when it gives way to other forces. The "prior geologic movement" that caused the soil to weaken would itself be commonly understood as a form of earth movement.

■ Weakened soil, in this context, is but another way of describing the excluded peril of landslide. The efficient proximate cause rule does not apply when the policy

*excludes* the proximate cause from coverage.[14] It would serve no purpose to allow a jury to decide that an excluded peril, weakened soil, was the proximate cause of damage. Accordingly, the trial court did not err in refusing to submit the "weakened soil" theory to the jury.

The homeowners also propose "heavy rainfall" as the proximate cause, relying on a report by GeoEngineers, Inc. The report resembles the Converse report in its description of the area as an ancient landslide complex that was never more than marginally stable. The GeoEngineers report differs in that it identifies the most significant destabilizing agent not as weakened soil but rather the record rainfall that fell during the two months before the landslide. The rain caused the levels of groundwater in the area to recharge at more than five times the usual rate. The report explains that a rise in the groundwater table can both increase the driving force and lower the resisting force within the slide mass.

Water damage is an excluded event under both policies. Water damage means, among other things, loss caused by "natural water below the surface of the ground" (State Farm) or "water below ground level" (Farmers). It is undisputed that these contractual provisions exclude loss proximately caused by rising groundwater. But because there is no exclusion for loss proximately caused by rain, the homeowners seek to apply the efficient proximate cause rule and get their case before a jury.

■ Under *Kish*, the issue we must first consider is whether rain is truly a distinct peril, or whether groundwater is commonly understood to encompass groundwater recharged by heavy rainfall.

■ According to *Kish*, insureds commonly understand "flood" in a policy exclusion to encompass flooding induced by rain. That case involved the same record rainfall of November 1990. After the rain came flood, an excluded peril. Homeowners in the Stillaguamish River Basin

---

[14]*See McDonald*, 119 Wn.2d at 732, 735.

contended that the heavy rainfall set the flood in motion. The jury found that record breaking rainfall was the efficient proximate cause of the loss. Rainfall is not an excluded peril, and the trial court entered judgment granting coverage. The Supreme Court reversed, holding that the efficient proximate cause rule did not come into play because "in this instance," rain and flood were not distinct perils. The court consulted the dictionary to conclude that the ordinary understanding of the term "flood" would encompass "rain-induced flood."[15]

The high groundwater levels in this case are best characterized as "rain-induced groundwater," analogous to the "rain-induced flood" in *Kish*. A distinction between groundwater and rain in this context is artificial. The ordinary consumer understands that water below the surface of the ground has a source and that the source is typically rain. If a policy exclusion for groundwater does not operate to exclude groundwater fed by rain, it is an exclusion that would virtually never apply. *Cf. Bettigole v. American Employers Ins. Co.*[16] (corrosion exclusion encompasses corrosion induced by chloride ions; if held otherwise, the corrosion exclusion "would tend to disappear altogether because some similar agent of the process could always be identified.").

In *Kish*, the known frequency of flooding and the presence of the National Flood Insurance Program were "red flags" to homeowners in the Stillaguamish Basin. These circumstances reinforced the court's conclusion that the insureds would not reasonably expect ordinary insurance to protect them against flood.[17] No comparable information was available to the Salmon Beach homeowners. The risk that rain-fed groundwater would bring about the collapse of a hillside was less obvious, and the record does not reflect that extra insurance was routinely available to

---

[15]*Kish*, 125 Wn.2d at 171.

[16]*Bettigole v. American Employers Ins. Co.*, 30 Mass. App. Ct. 272, 276, 567 N.E.2d 1259, 1261-62, *review denied*, 409 Mass. 1104 (1991). (Footnote omitted.)

[17]*See Kish*, 125 Wn.2d at 172-73.

protect against that risk or the risk of landslide in general. But *Kish* does not hold that courts will give effect to exclusions from all-risk coverage only when the extent of the risk is well known. In this case the policy exclusions alone are clear enough to define the parties' reasonable expectations.

The homeowners say the above analysis, as applied to cases involving rain, is a *sub rosa* return to the *Bruener* "immediate physical cause" rule. We disagree. When the insured identifies rain or any other peril as an indirect cause of damage, and it is a distinct covered peril not encompassed within the ordinary understanding of a policy exclusion, the efficient proximate cause rule continues to apply. *Cf. Sunbreaker Condominium Ass'n v. Travelers Ins. Co.*[18] (where wind-driven rain was a distinct, covered peril under the policy and expert testimony identified rain as the cause of fungus, the policy's fungus damage exclusion did not necessarily bar recovery for fungus damage because the jury could find that wind-driven rain was the efficient proximate cause).

Because we affirm the trial court's decision to deny coverage, we need not address the insurers' cross-appeal.

The orders of dismissal on summary judgment·are affirmed.

BAKER, C.J., and WEBSTER, J., concur.

---

[18]*Sunbreaker Condominium Ass'n v. Travelers Ins. Co.*, 79 Wn. App. 368, 901 P.2d 1079.