[No. 35737-9-I.   Division One.   September 18, 1995.]

SUNBREAKER CONDOMINIUM ASSOCIATION,
*Respondent*, v. THE TRAVELERS INSURANCE COMPANY,
*Appellant*.

---

[6]40 Wn. App. 459, 698 P.2d 1109, *review denied*, 104 Wn.2d 1010 (1985).

[7]*Dorsey*, 40 Wn. App. at 473.

[8]*Pressley*, 64 Wn. App. at 598.

*Russell C. Love* and *Thorsrud Cane & Paulich,* for appellant.

*Dale L. Kingman, Michael E. Ricketts,* and *Peery Hiscock Pierson & Ryder,* for respondent.

WEBSTER, J. — In this case, wind-driven rain penetrated the southern wall of a condominium building, causing dry rot. The owner, Sunbreaker Condominium Association, sued its insurer, The Travelers Insurance Company. Sunbreaker contends that its all-risk insurance policy covers loss from wind-driven rain. Relying on the efficient proximate cause rule, Sunbreaker argues that the insurer is liable despite the policy's dry rot exclusion. The Travelers contends that the policy characterizes dry rot and rain as a single, excluded peril. The trial court entered sum-

mary judgment for Sunbreaker. We agree with the trial court that the policy characterizes rain and dry rot as distinct perils. We reverse, however, because there is an issue of material fact as to the efficient proximate cause of Sunbreaker's loss.

## FACTS

The Sunbreaker Condominium is a four-story, twelve-unit building immediately adjacent to Lake Washington in the Leschi district of Seattle, Washington. It was built of wood, plywood nailed to wood studs, in 1980. Although the building paper stapled to the plywood met minimum standards, it was better suited for drier climates. Workers applied stucco on top of the building paper. Although the stucco cracked over time, the amount of cracking was within a normal range.

Rain water began penetrating the stucco within thirty days of construction completion. The building paper rapidly deteriorated. Water penetrated the plywood and the studs. The wood decayed over time as it retained a moisture content greater than twenty percent. Decay started, at least in localized areas, within two or three years of construction.

In 1991, the Sunbreaker Condominium Association [Sunbreaker] discovered extensive dry rot in the building's south facing wall. Sunbreaker made a claim to the insurer under its all-risk insurance policy. The policy covers direct physical loss of or damage to the condominium unless excluded.[1] The policy excludes loss or damage caused by or resulting from corrosion, fungus, decay, or deterioration [hereafter fungus exclusion].[2] Dry rot is a rapid decay of wood due to fungi. *Webster's New Twentieth Century Dictionary* 561 (2d ed. 1977). The fungus exclusion does not apply to loss or damage by "specified causes of loss," a

---

[1]Appendix, ¶¶ A, A.4. The appendix to this opinion includes the most relevant provisions, and this opinion references the provisions by paragraph number.

[2]Appendix, ¶ B.2.d.(2).

term that includes windstorm or hail, or water damage.[3] The policy also excludes repeated seepage or leakage of water, and faulty or defective construction.[4] Weather conditions are excluded *if* they contribute to loss or damage caused by earth movement, flood, or other event described in paragraph B.1. of the exclusions.[5]

The Travelers denied Sunbreaker's claim and Sunbreaker filed suit. The parties filed cross-motions for summary judgment, agreeing on the *sequence* of events: "dry rot began when wind-blown rain entered several components of the wall system of the south building wall." Sunbreaker contended that the policy covered the loss because wind-driven rain, a covered peril, efficiently caused its loss. The insurer contended that dry rot and rain were not distinct, and that the policy excluded dry rot. The Travelers also relied on the policy's exclusions for faulty construction and repeated seepage. The trial court entered summary judgment in favor of Sunbreaker.

DISCUSSION

A

Standard of Review

■ The first issue is whether the trial court properly denied the insurer's motion to strike portions of an expert's declarations. In the course of summary judgment proceedings, the trial court must frequently make evidentiary decisions. The trial court's summary judgment order should reflect these decisions. CR 56(h) (designating documents considered by the trial court); RAP 9.12. The standard of review for trial court evidentiary decisions, including those made in the course of summary judgment proceedings, is abuse of discretion. *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1109 (5th Cir. 1991), *cert. denied*, 503 U.S. 912 (1992).

---

[3]Appendix, ¶¶ B.2.d., G.8.

[4]Appendix, ¶¶ B.2.f., B.3.c.

[5]Appendix, ¶ B.3.a.

■ Our review of the trial court's evidentiary decision will define the scope of the record. We then review the summary judgment order de novo. *Ernst Home Ctr., Inc. v. United Food & Commercial Workers Int'l Union, Local 1001*, 77 Wn. App. 33, 40, 888 P.2d 1196 (1995).

## B

### Motion To Strike Portions of Expert's Declarations

The Travelers moved for summary judgment, contending that Sunbreaker's loss resulted from "routine rainfall" seeping though cracks and openings in the south wall, causing dry rot. Joseph Bozick, Sunbreaker's expert, submitted a declaration countering the "routine rain" description. Bozick described the general effects of a November 1990 storm with which Bozick was "personally familiar."

> This storm led to flooding in the Stanwood area, caused the old Mercer Island floating bridge to sink, and would have affected the Sunbreaker building, which is very near the bridge. Such a storm, and other instances of high wind and rains which have occurred since the building was built, cannot be termed "routine". . . .

Bozick's Second Supplemental Declaration described a January 1986 storm with which he was "familiar" and "which again involved high winds and heavy rain and caused damage in the vicinity of the Sunbreaker building." It concluded: "Such a storm as occurred both in 1986 and 1990 would have had a dramatic effect on the Sunbreaker building, and would have caused significant amounts of rain water to penetrate the exterior walls and lead to dry rot damage."[6] The insurer contends that the trial court should have stricken Bozick's testimony because he does not have personal knowledge of the 1986 and 1990 storms and their effect on the Sunbreaker Condominium. ER 602, CR 56(e).

---

[6]Bozick's Second Supplemental Declaration included a newspaper article describing the 1986 storm.

■ The personal knowledge requirement contained in ER 602 is subject to ER 703 relating to expert witness opinion testimony. ER 602. Expert opinion may rely on hearsay. *Cornejo v. State*, 57 Wn. App. 314, 326, 788 P.2d 554 (1990). Therefore, even if Bozick did not personally experience the 1986 and 1990 storms, he may rely on information relating to those storms in forming his opinion about existing damage at the Sunbreaker Condominium. The Travelers also contends that Bozick failed to indicate that either storm included southerly winds which would have driven rain into Sunbreaker's south wall. Bozick's alleged lack of specificity reflects on the declaration's probative value, not its admissibility. The trial court did not abuse its discretion by refusing to strike Bozick's testimony.

## C

### Coverage and Causation

■ An insurer is liable under a contract for insurance when a covered peril causes a loss. The court must first determine the scope of the policy's coverage. *Cf. Graham v. Public Employees Mut. Ins. Co.*, 98 Wn.2d 533, 540, 656 P.2d 1077 (1983) (Brachtenbach, J., dissenting) (the court's initial task is to identify fully the terms of the contract). The court determines coverage by characterizing the perils contributing to the loss, and determining which perils the policy covers and which it excludes. *Kish v. Insurance Co. of N. Am.*, 125 Wn.2d 164, 170, 883 P.2d 308 (1994). The scope of the policy's coverage is, however, distinct from the issue of causation.

■■ Insurance contracts frequently incorporate causation principles. The Travelers policy covers "direct physical loss . . . caused by or resulting from a Covered Cause of Loss" but excludes "loss or damage caused by or resulting from" a variety of events.[7] The efficient proximate cause

---

[7]Appendix, ¶¶ A, B(1)-(3).

rule is a rule of contract construction.[8] The rule requires courts to apply insurance contract causation language with reference to the efficient proximate cause of the loss, rather than its immediate, physical cause. *Graham*, 98 Wn.2d at 538. The rule effectively imposes liability on an insurer for a loss efficiently caused by a covered peril, even though other, excluded perils contributed to the loss. *Safeco Ins. Co. of Am. v. Hirschmann*, 52 Wn. App. 469, 475, 760 P.2d 969 (1988), *aff'd*, 112 Wn.2d 621, 773 P.2d 413 (1989).

The efficient proximate cause rule applies only where two or more distinct perils operate to cause a loss, and the policy covers one or more, but not all. *Kish*, 125 Wn.2d 170. The rule does not apply when a single peril causes a loss, in which case the insurer's liability depends on whether the policy excludes or covers the peril. *McDonald v. State Farm Fire & Casualty Co.*, 119 Wn.2d 724, 735-36, 837 P.2d 1000 (1992). Thus, we will first characterize the perils and determine the policy's scope of coverage. Because we find that one peril which contributed to causation is covered, while three others are excluded, we will subsequently address causation.

### 1. Characterization of Perils as Single or Distinct

In this case, the insurer contends that the policy characterizes wind-driven rain and dry rot as a single peril excluded from coverage. *Kish v. Insurance Co. of N. Am.* is the only Washington Supreme Court case analyzing whether two forces are a single peril or distinct perils. 125 Wn.2d at 172. In *Kish*, the policies excluded loss resulting directly or indirectly from water damage. The definition of water damage included "flood," but "flood" was undefined. The jury determined that rain was the ef-

---

[8]It is a rule of construction because certain consequences follow from the terms of the contract and from a legal policy applicable to the situation. *Berg v. Hudesman*, 115 Wn.2d 657, 663, 801 P.2d 222 (1990). Insurers cannot circumvent the rule by redefining causation. *Safeco Ins. Co. of Am. v. Hirschmann*, 112 Wn.2d 621, 627, 773 P.2d 413 (1989). *Cf. Findlay v. United Pac. Ins. Co.*, 78 Wn. App. 17, 23, 895 P.2d 32 (1995) (no improper circumvention where language and structure communicate an intent to exclude *coverage*).

ficient proximate cause of the loss. The Supreme Court reversed, holding rain and flood to be a single, excluded peril as a matter of law. *Kish*, 125 Wn.2d at 173.

■ As *Kish* recognized, the characterization of perils is a question of contract. *Kish*, 125 Wn.2d at 170 ("The pivotal question in this case is whether rain and flood are two separate perils *under the language of these policies*"). *Kish* applied "principles of interpretation for insurance contracts," including dictionary definitions, when interpreting the contract so as to ascertain the reasonable expectations of the parties. *Kish*, 125 Wn.2d at 170-72. Because courts interpret insurance policy language as an average purchaser would understand it,[9] Kish held that the word "flood" includes "rain-induced flooding." *Kish*, 125 Wn.2d at 171. Similarly, in *Eide v. State Farm Fire & Casualty Co.*, 79 Wn. App. 346, 350, 901 P.2d 1090 (1995), we used commonsense understanding when determining that "weakened soil" was not distinct from "landslide."[10] These cases show that characterization of perils focuses on whether the events are contractually distinct, with reference to specific policy language and the perils allegedly involved in the particular factual setting. For even if two events are a single peril for purposes of a particular contract, the same exact events might be distinct perils under another. *Chadwick*, 17 Cal. App. 4th 1112, 21 Cal. Rptr. 2d 871, 875 (1993).

■ With these considerations in mind, we turn to the language of this all-risk insurance policy to determine whether dry rot and wind-driven rain are distinct perils. The policy's fungus exclusion does not refer to precedent or concurrent events, but in plain language excludes loss

[9]*Ames v. Baker*, 68 Wn.2d 713, 716, 415 P.2d 74 (1966).

[10]*See also Chadwick v. Fire Ins. Exch.*, 17 Cal. App. 4th 1112, 21 Cal. Rptr. 2d 871, 875 (1993) (insured not allowed to avoid a latent defects exclusion by calling the flaw "negligent construction"), and *Fujii v. State Farm Fire & Casualty Co.*, 71 Wn. App. 248, 251, 857 P.2d 1051 (1993), *review denied*, 123 Wn.2d 1009 (1994) (where policy covered direct physical loss to a dwelling, plaintiff could not recharacterize house and surrounding property as an "integrated engineering unit" in attempt to recover for soil destabilization).

or damage resulting from corrosion, fungus, or decay.[11] The policy, however, qualifies its exclusion: the insurer will pay for loss or damage by "specified causes of loss."[12] Many natural events, including windstorm, hail, and water damage, are "specified causes of loss."[13] The policy also contains a clause addressing weather conditions. Although it is an exclusion, it is narrow: it only excludes weather conditions which contribute to earth movement, power failure, flood, and other causes and events included in ¶ B.1. of the exclusions. The weather conditions exclusion does not apply to events listed in ¶ B.2. of the exclusions, and the fungus exclusion is in ¶ B.2.

Taken together, the fungus exclusion exception for "specified causes of loss," and the limited weather conditions exclusion, indicate an intent to characterize dry rot and wind-driven rain as distinct perils. The insurer is liable under both clauses for numerous weather events. The insurer's acceptance of this liability can be synthesized with the fungus exclusion only by characterizing wind-driven rain as contractually distinct from dry rot. Therefore, we reject The Travelers's argument that a single event caused the loss.[14]

The Travelers also contends that wind-driven rain is not distinct from the policy exclusion for "continuous or repeated seepage or leakage of water or other liquids that occurs over a period of 14 days or more."[15] As with the fungus exclusion, however, the seepage exclusion is contained in ¶ B.2., a paragraph excepted from the weather conditions exclusion.[16] The weather conditions clause evinces the insurer's intent to accept liability for loss or damage caused by wind-driven rain when the result-

[11]Appendix, ¶ B.2.d.(2).

[12]Appendix, ¶ B.2.d.

[13]Appendix, ¶ G.8.

[14]One other aspect of this particular case supports our conclusion. Sunbreaker seeks recovery under a specific coverage for "collapse," which explicitly includes collapse from hidden decay. *See* Appendix, ¶ A.6.b. The Travelers does not argue that collapse from dry rot is a single peril in conjunction with the dry rot exclusion. Thus, the insurer evidently recognizes that policy language and structure can characterize causally related events as distinct. *Cf. Findlay,* 78 Wn. App. at 23-24. *See also Brian Chuchua's Jeep, Inc. v. Farmers Ins. Group,* 10 Cal. App. 4th 1579, 13 Cal. Rptr. 2d 444 (1992), *review denied,* 1993 Cal. LEXIS *1554 (1993) (earthquake distinct from pollution where policy separately addressed each, and loss occurred when earthquake caused underground gasoline storage tank to leak).

[15]¶ B.2.f.

[16]¶ B.3.a.

ing damage is something other than earth movement, power failure, water damage, and other exclusions contained in ¶ B.1. Furthermore, the seepage exclusion relates to a long term event ("a period of 14 days or more") which is not commonsensically associated with a weather **condition**; the expert testimony in this case focuses on two particular storms, each of which lasted less than 14 days. The policy's structure and language both support a characterization of wind-driven rain as a peril which is distinct from "continuous or repeated seepage . . . that occurs over a period of 14 days or more." Therefore, we reject The Travelers's argument that a single event caused the loss.

Although The Travelers contends that the loss is excluded by the defective construction exclusion, we do not read its brief to suggest that defective construction and wind-driven rain are a single peril. Therefore, the record indicates four distinct causes that may have contributed to Sunbreaker's loss: defective construction, wind-driven rain, repeated seepage, and fungus. Wind-driven rain is a covered peril because it is not excluded (the policy only excludes weather conditions that contribute to a loss excluded in paragraph B.1.). Because the policy excludes three of these causes, while wind-driven rain is a covered peril, the efficient proximate cause rule applies.

2. Whether Wind-Driven Rain Efficiently Caused the Loss as a Matter of Law

In 1983, Washington adopted the efficient proximate cause rule, a rule which Lord Shaw eloquently explained in a marine insurance case:

> To treat proxima causa as the cause which is nearest in time is out of the question. Causes are spoken of as if they were as distinct from one another as beads in a row or links in a chain, but — if this metaphysical topic has to be referred to — it is not wholly so. The chain of causation is a handy expression, but the figure is inadequate. Causation is not a chain, but a net. At each point influences, forces, events, precedent and simultaneous, meet; and the radiation from each point extends infinitely. At the point where these various influences meet it is for the judgment as upon a matter of fact to declare which of the causes thus joined at the point of effect was the proximate and which was the remote cause.
>
> What does 'proximate' here mean? To treat proximate

cause as if it was the cause which is proximate in time is, as I have said, out of the question. The cause which is truly proximate is that which is proximate in efficiency. That efficiency may have been preserved although other causes may meantime have sprung up which have yet not destroyed it, or truly impaired it, and it may culminate in a result of which it still remains the real efficient cause to which the event can be ascribed.[17]

Thus, the insurer is liable for a loss efficiently caused by a covered peril, even though other, excluded perils form part of the net of causation. *Villella v. Public Employees Mut. Ins. Co.*, 106 Wn.2d 806, 816, 725 P.2d 957 (1986).

■ We must decide whether there is an issue of material fact precluding summary judgment. Bozick's first declaration included his opinion that "[t]he event which has set in motion all succeeding events and causes of the dry rot was rain." He also stated that rain was the "most important and significant event in relation to the ultimate damage to the structure." In his deposition, however, Bozick distinguished between "events" and "factors." He testified that the "most significant factor that allowed the rain to do its damage was the inability of the building paper to resist the moisture intrusion." Although the building paper met minimum standards, Bozick would not have recommended it, as it is more suitable for drier climates. Furthermore, the paper started to deteriorate "in the first couple of years," and it failed to serve its intended purpose of resisting water intrusion. As to Bozick's ultimate opinion, his deposition testimony was less certain than his declaration:

Q. Once we have all of those factors nailed down, is there anything that your experience adds in determining which of these items, whether it's the rain, whether it's the imperfections in the wall, or whether it's a dry rotting process, which of these is the most significant event?

A. Well, again, it's termed an event, so the situation I believe that we have is we have a wall system that as constructed was waiting for the rain to come and have its effect. We don't see that the cracks were anything out of the ordinary. We don't really see that the caulking is that out of the ordinary. It cracked and had some problems with it.

---

[17]*Leyland Shipping Co. v. Norwich Union Fire Ins. Soc'y, Ltd.*, [1918] App. Cas. 350, 369 (H.L.); *see also Aetna Ins. Co. v. Boon*, 95 U.S. (5 Otto) 117, 130, 24 L. Ed. 395 (1877) (fire insurance) ("The proximate cause is the efficient one, the one that necessarily sets the other causes in operation. The causes that are merely incidental or instruments of a superior or controlling agency are not the proximate causes and the responsible ones, though they may be nearer in time to the result.").

The building paper deteriorated more than I would expect it should have, but basically it was a wall system just waiting for repeated occurrences of rainfall that would penetrate these various situations and get to the wood and cause the decay process. If it never rained, obviously we wouldn't have the dry rot.

Although the parties do not dispute the sequence of events, a reasonable juror could conclude that defective design, defective materials, repeated seepage or leakage, and/or fungus efficiently caused Sunbreaker's loss.[18] If one of these excluded perils efficiently caused the loss, the insurer is not liable. Proximate cause is an issue of material fact precluding summary judgment.

### D
### Additional Coverage For Collapse

■ The insurer's cross-motion for summary judgment contended that the collapse coverage was inapplicable. Appendix, ¶ A.6.b. The trial court denied the motion and The Travelers appeals. Sunbreaker contends that the denial is not appealable as a matter of right, and that the court should only review the decision if discretionary review is appropriate. *See* RAP 2.2, 2.3(b). We agree. *Sea-Pac Co. v. United Food & Commercial Workers Local Union 44*, 103 Wn.2d 800, 801-02, 699 P.2d 217 (1985). When the trial court denies summary judgment on one issue, but enters a final judgment on a distinct, dispositive issue, a party seeking review of the summary judgment determination must establish that discretionary review is warranted.

We have reviewed the record and the parties's contentions. The Travelers has not met the standard for discretionary review. RAP 2.3(b). Therefore, we decline to review the trial court's denial of summary judgment.

We reverse the judgment and remand the case to the trial court.

BAKER, C.J., and BECKER, J., concur.

---

[18]Although Bozick talks in terms of wind-driven rain, he does not state whether the 1986 or 1990 storms included northern winds. On this record, a juror could conclude that repeated water seepage caused the loss. We decline to review Sunbreaker's contention that the insurer waived the defective design/construction exclusion because Sunbreaker did not argue waiver before the trial court. RAP 2.5(a).

## APPENDIX

### A. COVERAGE — BUILDING, BUSINESS PERSONAL PROPERTY AND BUSINESS INCOME

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss.

. . . .

### 4. Covered Causes of Loss

RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

a. Limited in Paragraph A.5., Limitations:

or

b. Excluded in Section B., Exclusions.

. . . .

### 6. Additional Coverages

Unless otherwise stated, payments made under the following Additional Coverages will not increase the applicable Limits of Insurance.

. . . .

#### b. Collapse

We will pay for loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of a building caused only by one or more of the following:

. . . .

(2) Hidden decay;

. . . .

Collapse does not include settling, cracking, shrinkage, bulging or expansion.

### B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

. . . .

#### b. Earth Movement

. . . .

**e. Power Failure**

. . . .

**g. Water**

    (1) Flood, surface, water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

    . . . .

2. We will not pay for loss or damage caused by or resulting from any of the following:

. . . .

**d.** . . . .

    (2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

    . . . .

But if loss or damage by the "specified causes of loss" results, we will pay for that resulting loss or damage.

. . . .

    **f.** Continuous or repeated seepage or leakage of water or other liquids that occurs over a period of 14 days or more.

3. We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

    **a.** Weather conditions, but this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in B.1. above to produce the loss or damage.

. . . .

    **c.** Faulty, inadequate or defective:

    . . . .

    (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property on or off the described premises.

. . . .

## G. PROPERTY DEFINITIONS

. . . .

8. **"Specified Causes of Loss"** means the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

After modification, further reconsideration denied November 27, 1995.

Review denied at 129 Wn.2d 1020 (1996).