990 P.2d 414 (1999)
98 Wash.App. 7
Leon CAPELOUTO, a single man, and Capelouto Enterprises, Inc., d/b/a Shafrans, Appellants,
v.
VALLEY FORGE INSURANCE COMPANY, and a foreign corporation and First National Insurance Company of America, a Safeco Insurance Company, Respondents.
No. 43317-2-I.
Court of Appeals of Washington, Division 1.
November 1, 1999.
Publication Ordered December 7, 1999.
*416 Charles Kenneth Wiggins, Kenneth Wendell Masters, Wiggins Law Ofc., Bainbridge Is., Robert W. Burns, Hansville, for Appellants.
John Patrick Cook, Dirk Jonathan Muse, Lee, Smart, Cook, Martin & Patterson, Seattle, Lisa Allison Hollomon, Lee, Smart, Cook, Martin & Patterson, Bellevue, for Respondents.
Robert Francis Riede, Jerret E. Sale, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Seattle, for First Nat. Ins. Co.
William Robert Hickman, Reed McClure, Seattle, for others.
*415 COLEMAN, J.
Leon Capelouto appeals the trial court's orders dismissing his coverage, bad faith, and Consumer Protection Act (CPA) claims against his insurers, Valley Forge Insurance Company and First National Insurance Company. Capelouto claims that an inadequate pump used on a sewer replacement project near his property caused sewage to back up into his basement. He contends that his insurers incorrectly concluded that an exclusion for damage caused by inadequate specifications or construction of property off of the premises prevents recovery for his losses, arguing that the exclusion is ambiguous and that the use of an inadequate pump is a distinct, covered peril. Capelouto also contends that his insurers erroneously concluded that any ensuing losses were caused by an excluded risk, water that had backed up from a sewer, arguing that sewage is a distinct peril and that the exclusion does not unambiguously apply to damage caused by sewage. Finally, Capelouto contends that his insurers failed to determine the efficient proximate cause of his loss, misrepresented facts, failed to disclose relevant policy provisions, and failed to inform him of the grounds for their denials.
Because neither inadequate specifications and the use of an inadequate pump nor sewage and sewer water can be reasonably understood to be distinct perils, we conclude that the policies' exclusions unambiguously preclude recovery for the claimed loss. Therefore, we affirm the orders dismissing Capelouto's coverage claims. We also conclude that Capelouto's bad faith and CPA claims are without merit, and we affirm the orders dismissing these claims.

FACTS
Leon Capelouto operates a retail business in a building he owns on California Avenue in West Seattle. At approximately 2:45 pm on February 21, 1996, he discovered raw sewage overflowing from his toilet. That day, King Construction Company was replacing the sewer pipes under California Avenue and had installed a temporary bypass of the main sewer line at a manhole approximately 100 feet from Capelouto's store. The bypass system consisted of a plug on the main sewer that was connected to hoses and a pump. When notified of the overflow, a project manager for King Construction told Capelouto that the bypass system was inadequate and had caused the sewage to back up. By the time the flow was stopped, approximately an hour after it had been discovered, six to eight inches of sewage covered Capelouto's basement floor, resulting in damage to fixtures and merchandise. Capelouto filed a claim with the City, which was referred to King Construction's insurer, but he ultimately rejected a settlement offer as inadequate.
On August 12, 1996, Capelouto submitted claims to Valley Forge and First National under his building, personal, and commercial property policies. In investigating the claims, the insurers interviewed Capelouto and visited the site of the loss. The insurers also interviewed King Construction's project manager, who reported that their bypass equipment had not failed, but was inadequate to handle the flow through the sewer line after it had rained. The project manager explained that they had not realized that storm drains were tied into the sewer line *417 above their bypass pump and that the accident occurred on the first day the bypass system was used in that area. Another King Construction employee, who had stopped the overflow, told the insurers that it had rained just before he learned of the accident. The insurers reviewed a blueprint of the area and the bypass system used in the sewer project. The insurers also obtained an analysis from Northwest WeatherNet, which concluded that it had likely rained in West Seattle on that day.
On December 4, 1996, Valley Forge denied coverage for the claim under its main policy, finding that the policy extended only limited coverage for $2,500 under an additional coverages endorsement. Valley Forge denied further coverage on the ground that all the possible efficient causes of the loss are excluded risks. Their investigation had identified three possible causes for the loss: the rain, King Construction's faulty bypass system, or a faulty, inadequate, or defective pump that Capelouto claimed was the efficient cause of the loss. The Valley Forge policy, however, does not cover damage caused by a weather condition which results in water backing up from a sewer or damage caused by faulty, inadequate, or defective design, specifications, workmanship, repair, and construction of property off of the insured's premises. Valley Forge concluded that King Construction's inadequate bypass system is an excluded risk under the latter provision and that the inadequacy of the pump is not a distinct peril.
On December 20, 1996, First National also denied coverage. First National concluded that the rain reported by King Construction's employees was the predominant cause of Capelouto's loss and that this peril is excluded by a weather conditions exclusion. First National further concluded that all other contributing causes of the loss are also excluded, citing an inadequate specifications or construction exclusion that is identical to the Valley Forge exclusion, and rejecting Capelouto's attempts to recharacterize the inadequate pump as a distinct peril.
Capelouto sued both insurers for breach of contract, bad faith handling and investigation of the claim, and violations of the Consumer Protection Act, RCW 19.86. Capelouto argued that the pump, not the rain, was the efficient proximate cause of his loss, and he produced evidence showing that it had not rained or had rained only lightly prior to the overflow. Capelouto also submitted expert testimony and analysis on the pump's limited capacity. The expert, Erik Davido, confirmed that the sanitary sewer pipe connected to Capelouto's building received rainwater as runoff from building roof drains and from two surface water catch basins. Davido estimated that at the time of the accident, most of the flow through the bypass system was rainwater. He concluded that the cause of the accidental overflow was the bypass pump, finding that the original sewer pipe had a larger capacity than the bypass system and that the pump would have had to operate continuously to prevent the other equipment from causing an overflow. His report concluded that the pump did not have the capacity to handle the peak minimum flow of sewage and rainwater that he had calculated for the day of the accident. He later testified that if the pump had been working properly, the bypass system would have been adequate to handle the expected sewage flow, but that the pump did not have the capacity to clear the minimum calculated flow of sewage and rainwater combined.[1] The trial court ultimately dismissed all of Capelouto's claims against the insurers, and Capelouto appealed.

ISSUES
Coverage Claims
Capelouto argues that the trial court erred in dismissing his coverage claims because the efficient proximate cause of his loss is covered by his insurance. Under the efficient proximate cause rule, when an insured risk sets into motion a sequence of events in which the last event is an excluded risk, the excluded risk will not defeat recovery. Findlay *418 v. United Pac. Ins. Co., 129 Wash.2d 368, 373-74, 917 P.2d 116 (1996). Capelouto contends that the efficient cause of his loss was the use of an inadequate pump in the sewer project and that this risk is not specifically and unambiguously excluded in his policies.
We review the trial court's interpretation of an insurance policy de novo. See Smith v. Continental Cas. Co., 128 Wash.2d 73, 78-79, 904 P.2d 749 (1995). Insurance policies are construed as a whole and are given a fair, reasonable, and sensible construction consistent with the understanding of an average person purchasing insurance. Kitsap County v. Allstate Ins. Co., 136 Wash.2d 567, 575, 964 P.2d 1173 (1998). Courts examine the terms of an insurance contract to determine whether there is coverage under the plain meaning of the contract. Kitsap County, 136 Wash.2d at 576, 964 P.2d 1173. If terms are not defined, they must be given their "`plain, ordinary, and popular'" meaning. Kitsap County, 136 Wash.2d at 576, 964 P.2d 1173 (quoting Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wash.2d 869, 877, 784 P.2d 507, 87 A.L.R.4th 405 (1990)).
Both the Valley Forge and First National policies state that the companies will not cover damage caused by
[f]aulty, inadequate or defective:
....
(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, [or] compaction;
....
of part or all of any property on or off the described premises....
Capelouto is correct that the rule requiring strict construction of ambiguous terms applies with added force to exclusion clauses, which limit coverage under the policy. See Lynott v. National Union Fire Ins. Co., 123 Wash.2d 678, 691, 871 P.2d 146 (1994). Thus, our courts have repeatedly held that "[e]xclusions of coverage will not be extended beyond their `clear and unequivocal' meaning." American Star Ins. Co. v. Grice, 121 Wash.2d 869, 875, 854 P.2d 622 (1993). But here, the plain meaning of the exclusion indicates that the claimed loss, damage caused by the contractor's use of an inadequate pump on a sewer replacement project off of the insured's premises, is not covered.
Nevertheless, Capelouto argues that the inadequate equipment used by King Construction for the bypass system is distinct from King Construction's inadequate design and specifications for the system or its workmanship and construction for the job. The characterization of perils as single or distinct is a contract question. See Sunbreaker Condo. Ass'n v. Travelers Ins. Co., 79 Wash. App. 368, 376, 901 P.2d 1079 (1995) (the "characterization of perils focuses on whether the events are contractually distinct, with reference to specific policy language and the perils allegedly involved in the particular factual setting"); see also Findlay, 129 Wash.2d at 378, 917 P.2d 116. Capelouto argues that both policies define inadequate equipment as a distinct peril, noting that provisions in the policies treat "equipment" and "materials" separately. In support of his argument, Capelouto cites Sunbreaker, in which this court concluded that dry rot and wind-driven rain were distinct perils under the plaintiff's all-risk policy. Sunbreaker, 79 Wash.App. at 377, 901 P.2d 1079. But unlike the situation in Sunbreaker, Capelouto's argument does not identify a separate and distinct event that caused the excluded peril. Here, King Construction's inadequate design or specifications for the bypass system included the choice of an undersized pump, and thus the pump alone does not represent a separate event or cause of the loss.
As our Supreme Court has noted, "An insured may not avoid a contractual exclusion merely by affixing an additional label or separate characterization to the act or event causing the loss.'" Kish v. Insurance Co. of North Am., 125 Wash.2d 164, 170, 883 P.2d 308 (1994) (quoting Chadwick v. Fire Ins. Exch., 17 Cal.App.4th 1112, 1117, 21 Cal. Rptr.2d 871 (1993)). Rather, in examining such questions, courts turn to the general principles governing the interpretation of insurance contracts, including examining the ordinary meaning of the terms used, in order to ascertain the reasonable expectations of the parties to the contract. Sunbreaker, 79 Wash.App. at 376, 901 P.2d 1079 (discussing *419 Kish and Eide v. State Farm Fire & Cas. Co., 79 Wash.App. 346, 901 P.2d 1090 (1995)).
Given these principles, Capelouto's characterization of inadequate equipment as a distinct peril is an awkward interpretation of both the terms used in the exclusion and the events leading to his loss. As in Eide and Kish, the suggested distinction between the perils is artificial and does not reflect the ordinary consumer's understanding of the exclusion. See Eide, 79 Wash.App. at 353, 901 P.2d 1090 (insured argued that groundwater is distinct from rain, but the ordinary consumer would understand that water below the surface of the ground typically comes from rain); Kish, 125 Wash.2d at 171, 883 P.2d 308 ("We believe the average purchaser of insurance would expect that the term `flood' would encompass rain-induced flood."). We conclude that the pump's inadequacy is not distinct from the excluded peril of inadequate specifications, workmanship, or construction.
Capelouto further argues that the exclusion does not apply because the quality of the constructed sewer was not affected. We reject this argument. The bypass system was part of the construction process, and the inadequacy of its design or specifications falls within the plain meaning of the exclusion. A common sense reading of the exclusion indicates that it applies to inadequate specifications for the execution of a project as well as to damage caused by inadequately or defectively constructed property. Cf. Kroll Constr. Co. v. Great Am. Ins. Co., 594 F.Supp. 304, 307-08 (N.D.Ga.1984). We conclude that the exclusion precludes coverage in the instant case.
Ensuing Loss Coverage. The exclusion for inadequate specifications or construction permits recovery for ensuing losses that result from covered risks, providing: "But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage." Ensuing loss provisions are exceptions to policy exclusions and thus should not be interpreted to create coverage. See McDonald, 119 Wash.2d at 734, 837 P.2d 1000. Nevertheless, Capelouto contends that this provision extends coverage here because sewage is a covered risk.
The policies provide that water that backs up from a sewer or drain is an excluded cause of loss. Capelouto argues, however, that this exclusion does not apply because the damage caused by the sewage was independent of the damage caused by the backed-up sewer water. He further argues that sewage is distinct from water, and thus is not within the ordinary meaning of the exclusion, and that the exclusion is ambiguous.
As noted above, we interpret insurance contracts to give them a fair, reasonable, and sensible construction consistent with the understanding of an average person purchasing insurance. Kitsap County, 136 Wash.2d at 575, 964 P.2d 1173. In addition, ambiguities in policy exclusions must be construed strictly. Lynott, 123 Wash.2d at 691, 871 P.2d 146. Nevertheless, we conclude that Capelouto's understanding of this exclusion is not reasonable and does not reveal any ambiguity in the provision. The average person purchasing insurance would understand that water that backs up from a sewer includes sewage. That is the plain, ordinary, and popular meaning attributed to sewer water, and any other interpretation ignores the clear and unequivocal meaning of this exclusion. See Kitsap County, 136 Wash.2d at 576, 964 P.2d 1173. In construing a similar provision, Division Three held that it explicitly barred coverage for damage caused by backed-up sewage that had flowed into the insured's home. Hallsted v. Blue Mountain Convalescent Ctr., Inc., 23 Wash.App. 349, 351, 595 P.2d 574 (1979). Although the insured homeowner did not argue that the language of the exclusion itself was ambiguous, the court stated that the exclusion "is unambiguous-damage caused by water which backs up through the sewers (plural) is not covered. Obviously, this clause precludes protection from the instant peril[.]" Hallsted, 23 Wash.App. at 351, 595 P.2d 574.
In his argument, Capelouto relies on two Florida cases in which the courts held that such language is ambiguous or raises a substantial issue regarding whether sewage is water within the meaning of the policy. Florida Farm Bureau Ins. Co. v. Birge, 659 *420 So.2d 310, 311 (Fla.Dist.Ct.App.1994); Sterling v. City of West Palm Beach, 595 So.2d 284, 285 (Fla.Dist.Ct.App.1992). These cases are not persuasive. The common sense interpretation of the exclusion, as set forth in Hallsted, indicates that it precludes coverage for damage caused by backed-up water from a sewer. Capelouto's argument implies that the exclusion should apply only to water damage. But that expectation, in light of the exclusion's specific reference to backed-up sewers, is unreasonable. We conclude that the ensuing loss provisions do not provide coverage for the claimed loss.
Bad Faith and CPA Claims
Capelouto also contends that the trial court erred in dismissing his bad faith and CPA claims. Our review of the trial court's dismissal of these claims is de novo, and we note that we may sustain the trial court's judgment on any theory established by the pleadings and proof. Stuart v. American States Ins. Co., 134 Wash.2d 814, 818, 953 P.2d 462 (1998); Weiss v. Glemp, 127 Wash.2d 726, 730, 903 P.2d 455 (1995).
In Coventry Assocs. v. American States Ins. Co., 136 Wash.2d 269, 961 P.2d 933 (1998), our Supreme Court recently held that a first party insured may have a cause of action against an insurer for bad faith even in the absence of coverage. See Coventry, 136 Wash.2d at 277-83, 961 P.2d 933 (holding, however, that a first party insured is not entitled to a rebuttable presumption of harm). Our laws require insurance companies to "be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters." RCW 48.01.030. State regulations set forth minimum standards for insurers regarding their claims settlement practices. WAC 284-30-300. The regulations define as unfair practices the misrepresentation of pertinent facts and refusal to pay without a reasonable investigation, failure to disclose all relevant policy provisions, and failure to state the specific grounds for denying a claim. WAC 284-30-330, -350, -380; see also WAC 284-30-300 (stating that the regulations "define certain minimum standards which, if violated with such frequency as to indicate a general business practice, will be deemed to constitute unfair claims settlement practices").
Misrepresentation and Bad Faith Investigation. Capelouto first argues that his insurers misrepresented pertinent facts and failed to conduct an adequate investigation of his claim and the efficient proximate cause of his loss. An insurer must make a good faith investigation of the facts supporting a claim and may not deny coverage if a reasonable investigation would have proved the insurer's defense to be without merit. Industrial Indem. Co. v. Kallevig, 114 Wash.2d 907, 917, 792 P.2d 520, 7 A.L.R.5th 1014 (1990). In Kallevig, the court found sufficient evidence of bad faith when the insurer denied coverage without attempting to verify evidence presented by the insured that contradicted the insurer's theory of causation. Kallevig, 114 Wash.2d at 917-18, 792 P.2d 520.
But here, unlike the situation in Kallevig, the insurers' denial of the claims was based in part on their conclusion that all causes of the loss were excluded from coverage. Thus, the decision to deny coverage without further investigation, despite contradictory evidence of causation, was not unreasonable or "based upon suspicion and conjecture." Kallevig, 114 Wash.2d at 917, 792 P.2d 520. Further investigation to determine the efficient cause of the loss would not have invalidated the insurers' defense that all possible causes were excluded from coverage. Nor would the legal issues Capelouto raises, regarding whether his policies cover the risk of an inadequate bypass pump, be resolved through further investigation. In addition, the insurers' factual conclusions regarding the cause of the loss were not unfounded, but were based on the statements of King Construction employees and a report from a certified meteorologist. Thus, there is no indication that the insurers acted in bad faith or without reasonable justification in denying the claims, and we reject that argument. See Safeco Ins. Co. of Am. v. JMG Restaurants, Inc., 37 Wash.App. 1, 14, 680 P.2d 409 (1984).
Failure to Disclose Relevant Policy Provisions. Capelouto next contends that *421 First National's denial letter failed to quote amended language that was incorporated by an endorsement for Washington policies. The paragraph introducing policy exclusions, as quoted in the denial letter, states:
We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
The amended paragraph provides:
We will not pay for loss or damage caused by any of the excluded events described below. Loss or damages will be considered to have been caused by an excluded event if the occurrence of that event:
(a) Directly and solely results in loss or damage; or
(b) Initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence.
The amendment recognizes our courts' use of the efficient proximate cause rule to determine coverage under an insurance contract. The unamended language, however, does not preclude application of the rule. Rather, our courts have interpreted such provisions as referring to the efficient cause of a loss, thus ensuring that the intent and reasonable expectations of the parties to the contract are given effect. See Safeco Ins. Co. of Am. v. Hirschmann, 112 Wash.2d 621, 629, 773 P.2d 413 (1989). In light of our courts' treatment of such language, we conclude that this omission did not affect the application of the policy exclusions or the coverage available under the policy. Moreover, there is no indication that Capelouto was harmed or misled by First National's omission and, in fact, the record indicates that he was familiar with the rule at the time he filed his claim.
Capelouto also argues that First National omitted part of the policy provision excluding damage caused by inadequate specifications or construction. First National's denial letter does not notify the insured that the exclusion applies to damage caused by inadequate specifications or construction "of part or all of any property on or off the described premises." Capelouto contends that this language is significant because it indicates that the exclusion only applies when the quality of the final constructed property is impaired. This argument is based on a strained interpretation of this language, as discussed above, and we reject the argument that its omission constituted an actionable violation of the insurance regulations. See Coventry, 136 Wash.2d at 280, 961 P.2d 933 ("As long as the insurance company acts with honesty, bases its decision on adequate information, and does not overemphasize its own interests, an insured is not entitled to base a bad faith or CPA claim against its insurer on the basis of a good faith mistake.").
Capelouto finally argues that Valley Forge "failed to advise [him] that its own policy distinguishes between `materials' and `equipment', but it nonetheless concluded that inadequate equipment is excluded by its inadequate materials exclusion." Brief of Appellant, at 23. Valley Forge's denial of the claim, however, did not rely on the materials exclusion, but instead characterized the inadequate pump as the same peril as inadequate workmanship, specifications, or construction.[2] Furthermore, Capelouto does not show how he has been harmed by the alleged violation. Thus, we conclude that this contention also lacks merit.
Failure to State the Specific Grounds for Denying a Claim. Capelouto also contends that his insurers failed to explain the factual or legal basis supporting their denial of his claims. But contrary to his assertions, both denial letters set forth the insurers' understandings of the circumstances of the loss and the policy provisions governing coverage of the claim. In addition, both letters directly *422 responded to Capelouto's characterization of the pump as a distinct peril and attempted to explain the insurers' views on the applicable law. First National's denial letter states:
Your counsel, William Burns, has contended the pump was faulty or defective.... Mr. Burns has further stated the pump's inability to handle the increased load of sewer effluent involves defective or inadequate "equipment" which he claims is not excluded under the [inadequate construction or specifications] exclusion. Washington courts disregard attempts to affix an additional label or separate characterization to an act or event causing a loss in an attempt to avoid an unambiguous contractual exclusion. In this case, the pump[,] which was neither faulty [n]or defective, was merely inadequate to the task of diverting the excess water due to the recent "rain squall." Consequently, the pump's inadequacy did not involve a peril separate and apart from faulty, inadequate repair, workmanship, construction or specifications.
Valley Forge's denial letter contained a similar discussion with citation to authority.
Capelouto disagrees with this characterization of the inadequate pump and inadequate construction or specifications as the same peril. But "[a]cts performed in good faith under an arguable interpretation of existing law do not constitute unfair conduct violative of the consumer protection law." Leingang v. Pierce County Med. Bureau, Inc., 131 Wash.2d 133, 155, 930 P.2d 288 (1997). Our courts have rejected attempts to base bad faith and CPA claims on legal arguments when, as here, there is no showing of bad faith, there is a debatable question regarding coverage for the loss, and the denial of coverage is based on a reasonable interpretation of the insurance policy. See Farmers Ins. Co. v. Romas, 88 Wash.App. 801, 810, 947 P.2d 754 (1997), review denied, 135 Wash.2d 1007, 959 P.2d 125 (1998). We similarly reject such arguments here.
Capelouto also argues that First National failed to include in its denial letter an exclusion for damage caused by pollution. Capelouto argues that such conduct constitutes bad faith when, as here, the insurer later attempts to raise the exclusion as a defense to coverage. Capelouto has not shown, however, that he was prejudiced by this omission. The omission did not affect his decision to investigate and pursue litigation to determine the efficient cause of his loss, which he contended was a separate, covered peril. Thus, we also reject this contention.
Contrary to Capelouto's assertions, the factual issues presented by his bad faith and CPA claims are susceptible to summary judgment. Summary judgment may be granted when reasonable minds could reach only one conclusion from the evidence. White v. State, 131 Wash.2d 1, 9, 929 P.2d 396 (1997). In addition, the party resisting summary judgment may not rely on mere assertions that unresolved factual issues remain, but must set forth specific facts that sufficiently rebut the moving party's contentions and show the existence of a genuine factual issue, once the moving party has satisfied its burden. White, 131 Wash.2d at 9, 929 P.2d 396. Here, the record demonstrates that the insurers conducted a reasonable, good faith investigation of the loss. Since Capelouto has not produced any evidence to rebut this evidence or to show that he was harmed by the alleged unfair acts, we affirm the trial court's dismissal of these claims.
GROSSE, J., and BAKER, J., concur.
NOTES
[1] In a declaration, Davido later explained that the pump had the capacity to handle the average expected sewage flows if it was operating continuously and at an optimum level, but did not have the capacity to handle a flow exceeding the average expected sewage flow or an average sewage flow augmented with rainwater.
[2] Valley Forge's denial letter stated: "[T]he loss is excluded by virtue of the cause being `faulty, inadequate or defective design, specifications, workmanship, repair, construction, renovation, remodeling ...' o[f] part or all of any property on or off the described premises.

"....
"... [I]f the specified pump was inadequate for any of the reasons outlined above, it created a peril no different from that encompassed within the exclusions for faulty, defective or inadequate design, specification, or construction."